IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RAYSHAWN ABRAM,

                    Plaintiff,                                    **8:20CV437**

          vs.

NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES: SCOTT
R. FRAKES, Director of the Nebraska
Department of Correctional Services;
DON KLEINE, Douglas County                           **MEMORANDUM**
Attorney; BRENDA BEADLE, Chief                        **AND ORDER**
Deputy County Attorney; CAPTAIN
SELLERS, Douglas County Court
Services Bureau; MIKE MYERS,
Warden of the Douglas County Jail;
BARB LEWIEN, Warden of Community
Correction Center of Lincoln; and FRED
BRITTEN, Warden, Diagnostic and
Evaluation Center, Lincoln, all in their
individual and official capacities,

                    Defendants.

        Plaintiff Rayshawn Abram is currently incarcerated at the Omaha
Correctional Center. The court has granted Plaintiff permission to proceed in forma
pauperis (Filing 9), and the court now conducts an initial review of the Complaint
(Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C.
§§ 1915(e) and 1915A.

## I.  SUMMARY OF COMPLAINT

        Plaintiff's main complaint is that he was wrongly moved from the Lincoln
Community Correctional Center ("LCCC"), where he was on "education release"

pursuing coursework at Southeast Community College ("SCC"), to minimum custody at the Omaha Correctional Center ("OCC") after he "admit[ed] to things" in a court hearing[1], but did not commit any new criminal acts and had no misconduct issues. In response to Plaintiff's complaints about his reclassification, an individual labeled a "chief executive officer" of the Nebraska Department of Correctional Services ("NDCS") explained: "Mr. Abram, Due to your behavior and testimony in Douglas County court, it was decided to return you to the Diagnostic and Evaluation Center for reclassification. A reclassification was conducted by CCCL staff and it was determined to send you back to DEC." (Filing 1 at CM/ECF p. 22.)

Plaintiff alleges the following details which occurred around the time of Plaintiff's transfer to the OCC:

• Plaintiff was given verbal notice at the LCCC on May 23, 2019, of a May 28, 2019, evidentiary hearing in which he was to participate at the Douglas County Courthouse in Omaha. On May 24, 2019, Plaintiff requested that he be allowed to attend the hearing under a "four hour furlough/pass as allowed per NDCS Policy 201.04 Section II. Part D. Rule 1." (Filing 1 at CM/ECF p. 3.) Defendants Lewien, Kleine, and Beadle conspired to deny Plaintiff's pass request, thereby causing Plaintiff to miss his daughter's high school graduation on May 24, 2019.

• Defendants Frakes, Lewien, Myers, Kleine, and Beadle conspired to require Plaintiff to attend the May 28, 2019, evidentiary hearing in a county-jail jumpsuit and restraints, rather than in civilian clothing. The hearing was broadcast on the local television news on May 28, 2019.

• Between May 29 and June 5, 2019, multiple inmates were transferred from Omaha to Lincoln, but Plaintiff was not included in such transfers. Therefore,

---

[1] The nature of the court hearing and the contents of the testimony are not clear.

Plaintiff was unable to attend the last two weeks of the SCC semester, including final examinations, having an adverse effect on Plaintiff's final grades.

• On June 3, 2019, Plaintiff called 911 to complain about his "illegal detention" and "false imprisonment," for which Defendants Myers and Sellers were allegedly responsible. As a result of placing the 911 call, Plaintiff received a misconduct report, was advised of a hearing, and was placed in disciplinary segregation.

• On June 4, 2019, Plaintiff was placed in "Mod 20"—a housing unit reserved for the most severe infractions—for refusing a tuberculosis shot.

• Plaintiff was transferred from Mod 20 at the Douglas County Jail to LCCC on June 6, 2019, after which he was transferred to the NDCS Diagnostic and Evaluation Center ("D&E") because of the statements Plaintiff made in court.

• On June 10, 2019, Plaintiff's custody hearing was held, allegedly without notice to Plaintiff, as required by NDCS policy. The Disposition of Classification Action was decided on June 19, 2019, resulting in a final custody level of 3A and a facility assignment of "OCC/NSP." (Filing 1 at CM/ECF p. 15.) Plaintiff claims he was previously at custody level 4A/B when on educational release. (*Id.* at p. 16.) The stated rationale for Plaintiff's classification change was his "scored risk." (*Id.*)

• On July 24, 2019, Plaintiff's appeal of his reclassification was denied without a stated reason. (Filing 1 at CM/ECF p. 17.)

• A November 2019 classification hearing did not result in a change of classification, with Plaintiff remaining at custody level 3A and placement at the OCC. (Filing 1 at CM/ECF p. 19.)

Plaintiff claims Defendants violated his Fourteenth Amendment right to due process when he was moved from community custody to minimum custody; his right

3

to equal protection when Defendants did not allow him a furlough to attend the evidentiary hearing in plain clothes and to attend his daughter's graduation; his right to due process when he was placed in disciplinary segregation for making the 911 call and in Mod 20 for refusing a tuberculosis shot; and his First Amendment rights by retaliating against him because of his courtroom testimony. Plaintiff requests injunctive relief restoring him to community custody and monetary relief of $130 million against Defendants in their individual and official capacities.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard

4

than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Defendants' Capacities

Before addressing the substance of Plaintiff's claims, I discuss the types of claims that can be asserted against various Defendants based on the capacity in which they have been sued.

#### 1.  State Defendants

Plaintiff sues a state agency (the NDCS) and employees of state entities in their official capacities (Defendants Frakes, Lewien, and Britten) for money damages and injunctive relief. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and employees of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446-47; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981).

Moreover, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state is not a "person" as that term is used in 42 U.S.C. § 1983, and is not suable under the statute. *Hilton v. S. Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 200-01 (1991). Accordingly, § 1983 does not create a cause of action against the NDCS, and the Eleventh Amendment bars Plaintiff's requests for monetary damages against the remaining Defendants (Frakes, Lewien, and Britten) in their official capacities. These claims for relief shall be dismissed with prejudice. *See Tex. Cmty. Bank, N.A. v. Mo. Dep't of Soc. Servs., Div. of Med. Servs.*,

232 F.3d 942, 943 (8th Cir. 2000) (where Eleventh Amendment barred suit, state agency was entitled to dismissal with prejudice); *Warren v. Fort Dodge Corr. Facility*, 372 F. App'x 685 (8th Cir. 2010) (modifying dismissal to be with prejudice).

Sovereign immunity, however, does not bar damages claims against Frakes, Lewien, and Britten acting in their individual capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 that seek prospective injunctive relief from these Defendants acting in their official capacity. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation and citation omitted)); *Gibson v. Arkansas Dep't of Corr.*, 265 F.3d 718, 720-21 (8th Cir. 2001). Accordingly, Plaintiff's claims for prospective injunctive relief for ongoing violations of federal rights will be permitted to proceed. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005) ("A federal court may therefore issue an injunction to prevent state officials from violating the Constitution without running afoul of the Eleventh Amendment.").

### 2.  County Defendants

Plaintiff also sues four Douglas County employees in their individual and official capacities—Defendants Kleine, Beadle, Sellers, and Myers. Plaintiff's claims against these Defendants in their official capacities are actually claims against Douglas County itself. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. To prevail on a claim alleged against the county, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal-liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff's allegations against Defendants Kleine, Beadle, Sellers, and Myers in their official capacities—which are in reality a claim against Douglas County—fail to state a claim upon which relief can be granted because he does not

7

allege facts indicating that a policy or custom of a government entity caused the violation of his constitutional rights. However, Plaintiff's claims against these Defendants in their individual capacities may go forward.

## B.  Change of Custody Classification

Plaintiff claims that he had a constitutionally protected liberty interest in maintaining his community-custody educational-release status and the revocation of this status violated his Fourteenth Amendment right to procedural due process.

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). A plaintiff is entitled to due process only when a protected property or liberty interest is at stake. *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999).

### 1.  Protected Liberty Interest

A liberty interest arises under the Due Process Clause itself when the consequences of the state's actions are "stigmatizing" and "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime." *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)). In *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990), the Eighth Circuit Court of Appeals stated that a liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such

as when he is on probation or parole. In *Edwards*, the court held that an inmate enrolled in an Arkansas work-release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution, but lived in the community. *Id.* at 302-03. As the Eighth Circuit later acknowledged: "'*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration.'" *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996) (quoting *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995)). Indeed, other courts have similarly held that the revocation of things like parole, probation, and conditional-release programs are protected by the Due Process Clause if the prisoner lives in the community and not in an institutional setting. *See, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of probation status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (revocation of parole); *see also Harper*, 64 F.3d at 566-67 ("[A] prisoner release program which permits a convict to exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement."); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (finding inherent liberty interest in continued placement in supervised-release program that allowed convict to live in society).

As opposed to a liberty interest arising from the Due Process Clause itself, a state-created liberty interest arises when a statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

Here, Plaintiff alleges that he lived at the LCCC where he was on educational release, but was moved to the OCC for approximately two weeks to attend the hearing, and was then returned to the OCC after he was reclassified to custody level 3A. Plaintiff appears to claim a liberty interest in his educational-release status.

Plaintiff's allegations suggest that he had some freedom while on educational release, as he alleges he was housed at LCCC and attended Southeast Community College, but was moved to the OCC after he participated in the hearing and was reclassified. However, it is not apparent from the Complaint whether the conditions at LCCC were more analogous to probation or parole than to institutional life. *See Callender*, 88 F.3d at 668 (holding prisoner's work-release program did not provide the sort of substantial freedom necessary to give rise to a protected liberty interest inherent in the Due Process Clause as would entitle him to due process of law before program was terminated). Nor can the court discern from Plaintiff's allegations whether the loss of his educational-release status imposed an "atypical or significant hardship" that would give rise to a state-created liberty interest. As such, Plaintiff has failed to set forth sufficient facts to allege that he had a protected liberty interest under the Due Process Clause in maintaining his educational-release status. The court will give Plaintiff an opportunity to amend his Complaint to allege a protected liberty interest.

### 2. Sufficiency of Process Provided

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural requirements that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or is otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-72. These safeguards are (1) written notice of the charges at least 24 hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Id.* at 563-66. If Plaintiff chooses to amend his Complaint, he should clarify in detail the notice he received prior to reclassification and the nature of any hearing held, such as his opportunity to call witnesses and present documentary evidence.

## C.  Refusal to Allow Furlough Per Prison Policy

Plaintiff next alleges that Defendants violated his equal protection rights in refusing to grant him a four-hour furlough to attend the hearing in plain clothes and then attend his daughter's graduation. However, because Plaintiff "does not allege he was a member of a protected class or that a fundamental right was violated, he must show that similarly situated classes of inmates [were] treated differently, and that this difference in treatment [bore] no rational relation to any legitimate penal interest. He also must show intentional or purposeful discrimination." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (internal quotations and citations omitted). Plaintiff makes no allegations whatsoever regarding different treatment of similarly situated inmates or any type of discrimination; therefore, he fails to state an equal protection claim.

To the extent Plaintiff claims that Defendants failed to follow jail policy regarding furloughs, "there is no § 1983 liability for violating prison policy." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997); *see Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations).

## D.  Placement in Disciplinary Segregation and Mod 20

Plaintiff also claims he was deprived of due process by being improperly placed in disciplinary segregation for calling 911 to report his complaint about his custody status and placed in Mod 20 for refusing a tuberculosis shot.

> We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. Thus, in order for [the plaintiff] to assert a liberty interest, he must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship.

11

*Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (internal citation omitted). *See also Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005) (unpublished) (prisoner does not have liberty interest in particular classification).

Plaintiff makes no allegations whatsoever regarding whether his stays in segregation and in Mod 20 constituted an atypical and significant hardship in the context of normal prison life, and therefore Plaintiff fails to state a due-process claim. Plaintiff shall be given leave to amend his Complaint to make truthful factual allegations regarding the conditions in segregation, as compared to general-population conditions.

## E.  Retaliation Because of Courtroom Testimony

Finally, Plaintiff claims that Defendants violated the First Amendment when they reclassified him due to his courtroom testimony. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).

The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right. *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)). Under the third prong of the First Amendment retaliation claim test, a plaintiff must show that the retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. *Peterson*, 754

F.3d at 602. In other words, a plaintiff must show that he was singled out because he exercised his constitutional rights. *Id.*

Giving Plaintiff's Complaint the liberal construction to which it is entitled, I conclude that Plaintiff has alleged sufficient facts to allow this claim to go forward. *See, e.g., Dace v. Solem*, 858 F.2d 385, 388 (8th Cir. 1988) (claim that prisoner's classification was adversely affected due to his involvement in prison-related litigation allowed to go forward; "There is no question that state officials may not retaliate against a prison inmate for exercising his legal right of access to the courts.")

## F.  Motion for Appointment of Counsel

The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . . The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel . . . ." *Id.* (quotation and citation omitted). No such benefit is apparent at this time. Thus, Plaintiff's request for the appointment of counsel (Filing 4) will be denied without prejudice.

## IV.  CONCLUSION

Because § 1983 does not create a cause of action against the NDCS, and the Eleventh Amendment bars Plaintiff's requests for monetary damages against Defendants Frakes, Lewien, and Britten in their official capacities, these claims for relief shall be dismissed with prejudice. Sovereign immunity, however, does not bar Plaintiff's damages claims against Defendants Frakes, Lewien, and Britten acting in their individual capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 that seek prospective injunctive relief from these Defendants acting in their official capacities.

Plaintiff's allegations against Defendants Kleine, Beadle, Sellers, and Myers in their official capacities fail to state a claim upon which relief can be granted because Plaintiff does not allege that a policy or custom of a government entity caused the violation of his constitutional rights. However, Plaintiff's claims against these Defendants in their individual capacities may go forward.

Plaintiff's First Amendment retaliation claim may go forward. As to the remaining claims, Plaintiff will be given leave to file an amended complaint realleging the First Amendment claim, as well as his remaining claims that are insufficient in the particulars discussed above. Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states his claims against specific, named defendants. The amended complaint must specify in what capacity the defendants are sued, must identify each defendant by name, and must set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint (Filing 1) and any new allegations. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS ORDERED:

1.      The Clerk of Court shall add to the case caption at the end of the named Defendants: "all in their individual and official capacities."

14

2.     Plaintiff's claims against Defendant NDCS are dismissed with prejudice.

3.     Plaintiff's claims for money damages against Defendants Frakes, Lewien, and Britten in their official capacities are dismissed with prejudice.

4.     Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must identify each defendant by name and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

5.     In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

6.     The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

7.     The Clerk of the Court is directed to set a pro se case management deadline using the following text: April 26, 2021—amended complaint due.

8.     Plaintiff's Motion for Appointment of Counsel (Filing 4) is denied without prejudice.

9.    Plaintiff's Motion for Summons (Filing 5) is denied without prejudice, as the court will order service of process, if appropriate, after initial review is complete.

10.    Plaintiff's Motion for Status (Filing 10) is granted, and this Memorandum and Order will serve as notice of the status of Plaintiff's case.

11.    Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 26th day of March, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge