IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSHAWN ABRAM,<br><br>             Plaintiff,<br><br>vs.<br><br>SCOTT R. FRAKES, Director of the Nebraska Department of Correctional Services, in his individual and official capacities; DON KLEINE, Douglas County Attorney, in his individual and official capacities; BRENDA BEADLE, Chief Deputy County Attorney, in her individual and official capacities; CAPTAIN SELLERS, Douglas County Court Services Bureau, in his individual and official capacities; MIKE MYERS, Warden of the Douglas County Jail, in his individual and official capacities; BARB LEWIEN, Warden of Community Correction Center of Lincoln, in her individual and official capacities; and FRED BRITTEN, Warden, Diagnostic and Evaluation Center, Lincoln, in his individual and official capacities,<br><br>             Defendants. | 8:20CV437<br><br><br>MEMORANDUM<br>AND ORDER |

       Plaintiff, a prisoner now confined at the Nebraska State Penitentiary, filed an Amended Complaint (Filing 12) in response to this court's prior Memorandum and Order (Filing 11), which granted Plaintiff permission to file an Amended Complaint to state facts sufficient to allege the following claims: (1) Defendants violated Plaintiff's Fourteenth Amendment right to due process when Plaintiff was moved from community custody to minimum custody; (2) Defendants violated Plaintiff's right to equal protection when they did not allow him a furlough to attend an evidentiary hearing

in plain clothes and to attend his daughter's graduation; (3) Defendants violated Plaintiff's right to due process when he was placed in disciplinary segregation for making a 911 call to complain about prison conditions and in Mod 20 for refusing a tuberculosis shot; and (4) Defendants violated Plaintiff's First Amendment rights by retaliating against him because of his courtroom testimony.

In conducting an initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the court will not repeat the applicable legal analysis for each of Plaintiff's claims, as such analysis appears in detail in the court's initial review of Plaintiff's first Complaint. (Filing 11.)

## Claim (1): Change of Custody Classification

Plaintiff claims he had a constitutionally protected liberty interest in maintaining his community-custody educational-release status at the Lincoln Community Correctional Center (LCCC), and such status was revoked in violation of his Fourteenth Amendment right to procedural due process when he was transferred to minimum custody.

In an attempt to establish a protected liberty interest, Plaintiff's Amended Complaint alleges that while on educational-release status, he attended classes, church, addiction treatment, and attended to personal needs for 12 hours daily, Monday through Friday, only returning to the LCCC for evenings, nights, and weekends. (Filing 12 at CM/ECF p. 3.) Plaintiff alleges that his transfer out of the LCCC required him to sleep on a cot in an overcrowded dayroom at the Diagnostic and Evaluation Center due to lack of cell space, as well as "harsh conditions such as having to sit on a toilet that was visible to the entire unit to use the restroom—a tremendous contrast from his previous conditions." (Filing 12 at CM/ECF p. 8.)

However, Plaintiff fails to allege that his community-custody status allowed him to live in society on a full-time basis—as would a former prisoner who was on parole or probation—which, according to the Eighth Circuit Court of Appeals, is the "point at which the Due Process Clause itself implies a liberty interest." *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996). *See also Edwards v.*

*Lockhart*, 908 F.2d 299, 302-03 (8th Cir. 1990) (holding that inmate enrolled in Arkansas work-release program had protected liberty interest that arose from Due Process Clause itself because participant no longer lived in an institution, but lived in the community); *Callender*, 88 F.3d at 668 ("*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration." (internal quotation marks and citation omitted)); *Olana v. Mahr*, No. 8:20CV171, 2021 WL 4333767 (D. Neb. Sept. 23, 2021) (when plaintiff lived at community correctional center on work-release and could leave facility only within pre-approved limits of confinement, complaint failed to allege that plaintiff's work-release program provided the sort of substantial freedom that gives rise to liberty interest inherent in Due Process Clause).

Further, Plaintiff's Amended Complaint does not allege that the laws of Nebraska create a liberty interest in remaining in the LCCC educational-release program. While the physical conditions at the institution to which Plaintiff was transferred may have been unpleasant compared with the LCCC, the revocation of Plaintiff's educational-release status cannot be characterized as an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995) (30 days of solitary confinement, when compared with inmate's overall prison environment, was not the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Olana*, 2021 WL 4333767, at *5 ("Plaintiff does not allege that his transfer to a more secure facility subjected him to conditions different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion. Clearly, many inmates endured the same conditions of confinement that Plaintiff did when he was transferred to the OCC. . . . Moreover, there is no indication that the duration of Plaintiff's sentence was in any way affected by the revocation of his work release status. Therefore, the court finds no state-created liberty interest in remaining in Nebraska's work release program.").

Because Plaintiff's Amended Complaint fails to allege that Plaintiff had a protected liberty interest arising from the Due Process Clause itself or a state-created

liberty interest in maintaining his educational-release status, this claim will be dismissed for failure to state a claim upon which relief can be granted.

**Claim (2): Equal-Protection Challenge to Denial of Furlough**

Plaintiff next claims that the Defendants violated his right to equal protection when they denied his furlough request to attend an evidentiary hearing in Douglas County District Court in plain clothes and revoked a previously approved furlough request to attend his daughter's graduation. Instead, the Defendants required Plaintiff to be transferred to the Douglas County Jail, from which he attended the hearing in institutional clothing, and denied Plaintiff the opportunity to see his daughter graduate while he was in the Douglas County Jail.

Plaintiff's Amended Complaint alleges that Defendants Beadle, Kleine, Lewien, and Sellers denied and revoked Plaintiff's furlough requests because of his anticipated testimony at the Douglas County District Court hearing—that is, Plaintiff would testify consistent with an earlier deposition that Plaintiff "was the actual shooter in his criminal case, and that his codefendant, Jamaal Abram, had nothing to do with the crime." (Filing 12 at CM/ECF p. 3.) Plaintiff alleges that these Defendants acted "to punish plaintiff in response to the testimony that he was expected to give which would be hurtful to their case [against Plaintiff's codefendant, Jamaal Abram]." (Filing 12 at CM/ECF p. 4.) Plaintiff claims to be "a member of a protected class by being a black man who was incarcerated for shooting a white woman," and that "a specific inmate known as 'Q'— real name unknown—was allowed to attend a court hearing on furlough," as were "previous inmates who had [an] approved sponsor" like Plaintiff did. (Filing 12 at CM/ECF pp. 4-5.)

Plaintiff's Amended Complaint later alleges that on May 28, 2019, Plaintiff did actually "testif[y] that he was the actual shooter in his criminal case, and that Jamaal Abram had nothing to do with it." (Filing 12 at CM/ECF p. 5.) That same day, Plaintiff claims that Defendant Beadle appeared on the television news and stated that Plaintiff's testimony "was a lie and desperate attempt to free his co-defendant." (Filing 12 at CM/ECF p. 5.)

4

Although Plaintiff alleges that he is a member of a protected class—a black man incarcerated for shooting a white woman—he is not really alleging class-based discrimination based on race, but instead is claiming that he alone was singled out for different treatment in what is known as a class-of-one equal-protection claim. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). However, such a claim is a "'poor fit' in a context that involve[s] discretionary decisionmaking." *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 799 (8th Cir. 2009) (police officer's investigative decisions can be challenged under traditional class-based equal-protection analysis if, for example, tickets were issued on basis of race or sex, but decisions cannot be attacked in class-of-one equal-protection claim when they "necessarily involve discretion") (citing *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 604 (2008) (allowing equal-protection claim for issuing ticket to one person and not others, even if for no discernible reason, would be "incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.")). As stated in *Engquist*:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603.

Here, because the decision to grant or deny a furlough is discretionary and involves considering multiple, individualized factors, the Equal Protection Clause does

5

not prevent the Defendants from deciding to grant furloughs to some inmates and not to others. Thus, Plaintiff fails to state an equal-protection claim. Neb. Rev. Stat. § 83-184(1)(a) (Westlaw 2021) (in Nebraska, when certain conditions are met and "there is reason to believe that the best interests of the people of the state and the person committed to the department [of correctional services] will be served thereby, . . . the director *may* authorize" furloughs); *Robertson v. Kelly*, No. 5:18CV00152, 2018 WL 8335490, at *4 (E.D. Ark. Dec. 14, 2018), *report and recommendation adopted,* No. 518CV00152, 2019 WL 1325921 (E.D. Ark. Mar. 25, 2019), *aff'd sub nom. Robertson v. Kelley*, No. 19-2793, 2019 WL 7946353 (8th Cir. Dec. 23, 2019) (prisoner-plaintiff failed to state plausible class-of-one equal-protection claim when it challenged prison official's decision that involved case-by-case determination based on discretionary, subjective, and individualized assessment); *McDonald v. Golden*, No. 1:17CV00066, 2018 WL 4001278, at *5 (E.D. Ark. July 24, 2018), *report and recommendation adopted,* No. 1:17-CV-66, 2018 WL 3999699 (E.D. Ark. Aug. 21, 2018) (plaintiff failed to state plausible class-of-one equal-protection claim when he alleged that defendants failed to grant him furlough to attend funeral; "The decision regarding whether an inmate is suitable to be released from prison to attend a funeral necessarily involves a case-by-case determination that is based on a discretionary, subjective and individualized assessment."); *Sorenson v. Minnesota Dep't of Corrections*, Civil No. 12-1336, 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) ("Plaintiff's Equal Protection argument that he is being treated as a 'class of one' fails because requests for funeral furlough are evaluated on a purely discretionary basis.")

To the extent Plaintiff's Amended Complaint could be construed to attempt to allege a traditional class-based equal-protection claim, Plaintiff still does not state a claim upon which relief can be granted. First, a furlough is not a fundamental right. Second, the alleged discriminatory treatment is not alleged to have occurred to a protected *group* of which Plaintiff is a member, but only to Plaintiff. And third, when a prison program (i.e., granting furloughs) is discretionary, "a few instances of allegedly unequal treatment are not enough to make out an equal protection violation." *Lawver v. Dep't of Corr.*, No. 8:07CV100, 2008 WL 1882922, at *3 (D. Neb. Apr. 23, 2008) ("the fact that Plaintiff was denied discretionary furloughs but other[] inmates received discretionary furloughs does not state an equal protection violation"); *see also Phillips*

6

*v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (elements of traditional equal-protection claim).

Therefore, this claim will be dismissed for failure to state a claim upon which relief can be granted.

### Claim (3): Placement in Disciplinary Segregation and Mod 20

Plaintiff claims that he was deprived of due process when he was placed in disciplinary segregation and in "Mod 20" for a total of three days while he was in the Douglas County Jail. Plaintiff alleges that after his hearing in Douglas County District Court, several transfers of prisoners were made from the Douglas County Jail back to the LCCC, but Plaintiff was not transferred. On June 3, 2019, Plaintiff responded by dialing 911 "to file a complaint for being falsely imprisoned, illegally detained, and having his 4th and 8th Amendment rights violated," after which Plaintiff was placed in disciplinary segregation. (Filing 12 at CM/ECF p. 6 & Exs. 3, 3a.) The next day, on June 4, 2019, Plaintiff claims he refused a tuberculosis shot, resulting in his two-day placement in Mod 20, "a housing unit reserved for the most sever[e] infractions, e.g., staff assault, drug distribution, etc." (Filing 12 at CM/ECF p. 7.) Plaintiff alleges that in Mod 20, he was confined to his cell 23 hours out of every day; he had no window in his cell; he "couldn't freely use the phone to socialize with loved ones"; he could not interact and socialize with other inmates; and he had to wear leg and hand restraints while out of his cell, including during his shower. "None of these conditions exist in normal prison life," according to Plaintiff. (*Id.*)

Here, that fact that Plaintiff spent three days in segregation does not constitute an atypical and significant hardship such that Plaintiff possessed a liberty interest protected by due process. *Hamner v. Burls*, 937 F.3d 1171, 1180 (8th Cir. 2019), *as amended* (Nov. 26, 2019) ("Our precedents have said that a demotion to segregation, even without cause, is not itself an atypical and significant hardship" (internal quotation marks and citation omitted)); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("a demotion to segregation, even without cause, is not itself an atypical and significant hardship"); *Rahman X v. Morgan,* 300 F.3d 970, 973-74 (8th Cir. 2002) (26 months of

7

segregated confinement was not "atypical and significant hardship"); *Diaab v. Terry*, 221 F.3d 1341, 2000 WL 1006648 (8th Cir. 2000) (inmate's transfer to administrative segregation and then maximum security unit did not violate due process because it was not "a dramatic departure from the basic conditions of his confinement and thus [did] not constitute the type of atypical, significant deprivation in which a [S]tate might conceivably create a liberty interest" (internal quotation marks and citation omitted)); *Hemphill v. Delo*, No. 95-3357, 1997 WL 581079, at *2 (8th Cir. Sept. 22, 1997) (per curiam) (holding that "four days locked in [a] housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation" did not constitute an atypical and significant hardship).

Further, the other conditions Plaintiff alleges do not "exist in normal prison life" are not enough to constitute an atypical and significant hardship that would support a due-process claim. *See Rahman X*, 300 F.3d at 973-74 (no atypical and significant hardship where segregation lasted 26 months and prisoner was allowed out of his cell for recreation only three hours per week, like other death-row inmates); *Duren v. Adams*, No. 4:16-CV-04074, 2017 WL 3017298, at *6 (W.D. Ark. June 13, 2017), *report and recommendation adopted,* No. 4:16-CV-04074, 2017 WL 3016953 (W.D. Ark. July 14, 2017) (prison restrictions placed on Plaintiff—no television or media, no visitation, cell without a window, light on for 24 hours—were *de minimis* and did not implicate Constitution); *Duwenhoegger v. King*, No. CIV. 10-3965, 2013 WL 646235, at *10 (D. Minn. Jan. 28, 2013), *report and recommendation adopted,* No. 10-CV-3965, 2013 WL 646317 (D. Minn. Feb. 21, 2013), *aff'd,* 561 F. App'x 581 (8th Cir. 2014) (citing cases from other federal district courts finding that loss of general-population and phone privileges was not atypical and significant hardship); *Lawshea v. Phillips*, No. 1:07-CV-86, 2010 WL 5175161, at *4 (E.D. Mo. Dec. 7, 2010) (administrative segregation conditions did not constitute atypical or significant hardship, including permitting inmates to leave cell only for recreation and shower, keeping inmates in chains and handcuffs anytime they leave cell, prohibiting inmates from congregating with other inmates, and disallowing contact visits).

Therefore, this claim will be dismissed for failure to state a claim upon which relief can be granted.

**Claim (4): First-Amendment Retaliation Due to Courtroom Testimony**

I previously concluded that Plaintiff alleged sufficient facts to allow his claim to go forward that Defendants violated the First Amendment when they retaliated against him due to the contents of his courtroom testimony. *See, e.g., Dace v. Solem*, 858 F.2d 385, 388 (8th Cir. 1988) (claim that prisoner's classification was adversely affected due to his involvement in prison-related litigation allowed to go forward; "There is no question that state officials may not retaliate against a prison inmate for exercising his legal right of access to the courts.").

Plaintiff's Amended Complaint asserts this claim against Defendants Barb Lewien (current OCC Warden, alleged to be former LCCC Warden), Scott Frakes (NDCS Director), Brenda Beadle (Chief Deputy Douglas County Attorney), and Don Kleine (Douglas County Attorney), against whom he seeks injunctive relief in the form of restoring Plaintiff to community custody and $130 million in damages. (Filing 12 at CM/ECF pp. 8, 11.) However, because the Eleventh Amendment bars Plaintiff's request for monetary damages against Defendants Frakes and Lewien in their official capacities, as discussed in Filing 11, Plaintiff's claims for money damages against these two Defendants are dismissed with prejudice. Plaintiff's claims for monetary damages may proceed against Frakes and Lewien in their individual capacities, and his claims for prospective injunctive relief may proceed against these Defendants in their official capacities.[1] Further, because Plaintiff has again failed to allege facts indicating that a

---

[1] While the court will allow Plaintiff's request for prospective injunctive relief to proceed against Defendants Frakes and Lewien in their official capacities at this early stage, it is not clear from Plaintiff's allegations whether both of these Defendants have the responsibility for, or power to, return Plaintiff to community custody, especially since he now appears to be an inmate at the Nebraska State Penitentiary. *See* https://dcs-inmatesearch.ne.gov/Corrections/InmateDisplayServlet?DcsId=78145&return.
*Rosenthal v. Missouri Dep't of Corr.*, No. 2:13-CV-04150, 2016 WL 705219, at *7 (W.D. Mo. Feb. 19, 2016) ("In order for a plaintiff to receive injunctive relief from a defendant, that defendant must still be in the official capacity capable of granting that relief.").

policy or custom of Douglas County caused the First-Amendment retaliation against him, Plaintiff's claims against Defendants Beadle and Kleine (who are alleged to be Douglas County attorneys) in their official capacities are dismissed without prejudice. Plaintiff's claims for monetary damages may proceed against Beadle and Kleine in their individual capacities.

## CONCLUSION

Plaintiff's Claim (4)—that Defendants Barb Lewien, Scott Frakes, Brenda Beadle, and Don Kleine violated the First Amendment when they retaliated against him due to the contents of his courtroom testimony—will be permitted to proceed to service of process as follows: (1) Plaintiff's claims for monetary damages may proceed against Frakes and Lewien in their individual capacities, and the claims for prospective injunctive relief may proceed against Frakes and Lewien in their official capacities; and (2) Plaintiff's claims for monetary damages may proceed against Beadle and Kleine in their individual capacities.

IT IS ORDERED:

1. For the reasons discussed in Filing 11, Plaintiff's claims against Defendant NDCS are dismissed with prejudice, and NDCS is dismissed from this lawsuit with prejudice.

2. For the reasons discussed in Filing 11, Plaintiff's claims for money damages against Defendants Frakes and Lewien in their official capacities are dismissed with prejudice.

3. Plaintiff's Claim (4)—that Defendants Barb Lewien, Scott Frakes, Brenda Beadle, and Don Kleine violated the First Amendment when they retaliated against Plaintiff due to the contents of his courtroom testimony—will be permitted to proceed to service of process as follows: (a) Plaintiff's claims for monetary damages may proceed against Defendants Frakes and Lewien in their individual capacities, and the claims for prospective injunctive relief may proceed against Defendants Frakes and Lewien in their official capacities; and (b) Plaintiff's claims for monetary damages may

proceed against Defendants Beadle and Kleine in their individual capacities. All other claims are dismissed without prejudice.

4. Defendants Sellers, Myers, and Britten are dismissed from this case without prejudice.

5. For service of process on Defendants Scott Frakes and Barb Lewien in their official capacities and in their individual capacities in accordance with Neb. Rev. Stat. § 25-511, the Clerk of Court is directed to complete a summons form and a USM-285 form for each Defendant using the address "Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509," and forward them together with a copy of the Amended Complaint (Filing 12) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants Frakes and Lewien in their official and individual capacities at the Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509**. *See* Federal Rule of Civil Procedure 4(e)(1); Neb. Rev. Stat. § 25-511; Neb. Rev. Stat. § 25-510.02.[2]

6. For service of process on Defendant Scott Frakes in his individual capacity, the Clerk of Court is directed to complete a summons form and a USM-285

---

[2] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

form for such Defendant using the address "Nebraska Department of Correctional Services, 801 W. Prospector Pl., Lincoln, NE 68522" and forward them together with a copy of the Amended Complaint (Filing 12) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendant Scott Frakes, personally in his individual capacity, at the <u>Nebraska Department of Correctional Services, 801 W. Prospector Pl., Lincoln, NE 68522</u>**. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

7. For service of process on Defendant Barb Lewien in her individual capacity, the Clerk of Court is directed to complete a summons form and a USM-285 form for such Defendant using the address "Omaha Correctional Center, 2323 Avenue J, Omaha, NE 68110-0099" and forward them together with a copy of the Amended Complaint (Filing 12) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendant Barb Lewien, personally in her individual capacity, at the <u>Omaha Correctional Center, 2323 Avenue J, Omaha, NE 68110-0099</u>**. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

8. For service of process on Defendants Don Kleine and Brenda Beadle in their individual capacities, the Clerk of Court is directed to complete a summons form and a USM-285 form for such Defendants using the address "Douglas County Attorney, Hall of Justice, 1701 Farman St. #100, Omaha, NE 68183" and forward them together with a copy of the Amended Complaint (Filing 12) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants Don Kleine and Brenda Beadle, personally in their individual capacities, at the <u>Douglas County Attorney, Hall of Justice, 1701 Farman St. #100, Omaha, NE 68183</u>**. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

9. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

10. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process. The Clerk of Court shall set a case-management deadline accordingly.

DATED this 19th day of October, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge